STATE of Delaware, Plaintiff Below,
Appellant,

v.

Joseph W. GWINN and Eduardo Castro,
Defendants Below, Appellees.

Supreme Court of Delaware.

Dec. 18, 1972.

On Motion for Reargument Jan. 30, 1973.

Richard S. Gebelein, Deputy Atty. Gen., Wilmington, for plaintiff below, appellant.

Alfred J. Lindh and Arlen B. Mekler, Asst. Public Defenders, Wilmington, for defendants below, appellees.

Before WOLCOTT, Chief Justice, and CAREY and HERRMANN, Associate Justices.

HERRMANN, Justice:

This appeal by the State has been granted under 10 Del.C. § 9903, permitting the review of important questions of law upon the State's application for the governance of future cases.

The case from which the appeal arises involved a charge of possession of marijuana with intent to sell (16 Del.C. § 4724). The Superior Court granted the defendants' motion for suppression of the evidence on the ground of unlawful search and seizure. Upon the State's indication of inability to proceed without the evidence suppressed, the Superior Court dismissed the indictment. By agreement, the dismissal is deemed to be the final judgment of acquittal it should have been, thus making proper this § 9903 appeal by the State. State v. Roberts, Del.Supr., 282 A.2d 603 (1971).

I.

While on routine patrol, the police halted an automobile being driven in a southerly direction on a northbound lane of a divided highway. Upon examination, the officer arrested the defendant-driver for operating a motor vehicle under the influence of alcoholic liquor [21 Del.C. § 4176(a)]. The defendant-passenger was arrested for being drunk on a public highway (21 Del.C. § 4149).

The officer immediately called for a tow truck in order to have the defendant's automobile removed from the highway * and impounded, it having been determined that neither of the defendants was in any condition to operate the automobile. The tow and impounding service is carried on by a private concern under public contract. In accordance with controlling police regulations and procedure, the officer then and there, and without a search warrant, proceeded to make an inventory of the contents of the automobile preliminary to impounding it, the purpose being to secure

* 21 Del.C. § 6901 authorizes such action.

the contents and to protect the owner, the tow company, and the police from the consequences of loss or theft. The only remarkable items found in the interior of the car were empty beer cans. In the trunk, however, the officer saw a closed satchel. He opened the satchel and found therein the marijuana which was the basis of the charge against the defendants.

## II.

We have here a lawful arrest, followed by a bona fide inventory search preparatory to a reasonable impoundment, the clear purpose of the inventory being to safeguard the property for the protection of the owner, the police, and the tow company—and not to gather evidence. The overwhelming weight of authority supports the reasonableness and the lawfulness of such inventory search, and the admissibility of any evidence of crime that comes into the "plain view" of the inspecting officer in the course thereof, whether or not related to the offense for which the arrest has been made. E. g., United States v. Mitchell, 9 Cir., 458 F.2d 960 (1972); Cabbler v. Commonwealth, 212 Va. 520, 184 S.E.2d 781 (1971); United States v. Pennington, 5 Cir., 441 F.2d 249 (1971); State v. Dombrowski, 44 Wis.2d 486, 171 N.W.2d 349 (1969); Heffley v. State, 83 Nev. 100, 423 P.2d 666 (1967); State v. Criscola, 21 Utah 2d 272, 444 P.2d 517 (1968); State v. Montague, 73 Wash.2d 381, 438 P.2d 571 (1968); People v. Sullivan, 29 N.Y.2d 69, 323 N.Y.S.2d 945, 272 N.E.2d 464 (1971); St. Clair v. State, 1 Md.App. 605, 232 A.2d 565 (1967); State v. Hock, 54 N.J. 526, 257 A.2d 699 (1969). Compare Mayfield v. United States, D.C.C.A., 276 A.2d 123 (1971).

■ The United States Supreme Court has neither approved nor disapproved directly the inventory of the contents of an automobile without a search warrant. In Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968), however, it held that evidence obtained by the police while protecting property is admissi-

ble. And in Coolidge v. New Hampshire, 403 U.S. 443, 467–468, 91 S.Ct. 2022, 29 L. Ed.2d 564 (1971), the United States Supreme Court affirmed the "plain view" doctrine: contraband that comes into the plain view of a police officer, who is lawfully in a position to see it may be seized without a warrant and used as evidence in a criminal prosecution under certain circumstances. Among the acceptable circumstances outlined in *Coolidge* are these: where a policeman is searching under a warrant for some other evidence; where the initial intrusion which brings the policeman within the view of the item seized is an exception to the search warrant requirement; where the item is uncovered during a search incident to an arrest; and where "a police officer is not searching for evidence against the accused, but nonetheless inadvertently comes across an incriminating object."

■ This Court has heretofore approved and applied the "plain view" doctrine as an exception to the search warrant requirement. Aaron v. State, Del.Supr., 275 A.2d 791 (1971). We now approve the "automobile inventory" rule, as hereinabove limited and proscribed, as an exception to the search warrant requirement. We hold that such inventory search, when made to safeguard property for the benefit of owner, police, and tow company, and not under pretext to gather evidence without a warrant, is reasonable and not violative of Fourth Amendment rights.

## III.

■ Applying the foregoing rules to the instant case, it is clear that the police inventory search of the contents of the defendants' automobile was reasonable under the circumstances, there having been a lawful arrest and impoundment, and there having been no indication that the inspection was a search for evidence and not a bona fide inventory for the stated protective purposes. Thus, any contraband coming into the "plain view" of the officer during the inventory was subject to seizure

and use in a criminal prosecution under the rules here approved.

■ This brings us to the question of whether the contents of the closed satchel found in the trunk of the automobile came within the "plain view" doctrine. We think not. The record indicates nothing unusual or suspicious about the satchel. While the satchel itself was in "plain view" of the officer as he inventoried the contents of the auto trunk, the contents of the satchel were not in his "plain view" and do not fall within that doctrine.

The opening of the satchel and an inventory of its contents were not necessary for the stated protective purpose. An effective sealing device or chain-lock device suitable for suitcases and other baggage found in a motor vehicle during an inventory would have sufficed for the security purposes sought. A detailed inventory of the contents of baggage appear to be an impractical and unnecessary, and therefore unreasonable, intrusion under the circumstances. Baggage usually contains innumerable personal items. The police should be relieved of the too-burdensome obligation of such inventory; and the citizen should be relieved of such impractical and unnecessary intrusion of his privacy. In this connection, it is noteworthy that tow-away and impoundment are daily consequences of certain parking violations.

We hold, therefore, that the opening and search of the satchel were unreasonable and not within approved exceptions to the search warrant requirement; that, therefore, the seizure of the contents of the satchel was in violation of the Fourth Amendment rights of the defendants. We find support for the conclusion that the "plain view" doctrine is to be applied in conjunction with the "inventory search" rule, in Mozzetti v. Superior Court, 4 Cal. 3d 699, 94 Cal.Rptr. 412, 484 P.2d 84 (1971), and in United States v. Mitchell, 9 Cir., 458 F.2d 960 (1972); but see State v. Wallen, 185 Neb. 44, 173 N.W.2d 372 (1970).

Accordingly, we conclude that there was no error in the suppression by the Superior Court of the evidence found in the satchel.

## On Petition for Reargument

The State's petition for reargument of the plain view issue was granted because of the importance of reaching the correct balance between the protection of the police officer, on the one hand, and the protection of the privacy of the citizen, on the other.

■■ On reargument, the State stresses that the disability of the police officer to open the closed satchel found in the auto trunk, and to examine its contents as part of the inventory, deprives the automobile owner of maximum protection against loss or theft, and deprives the police officer of maximum protection against fraudulent claims.

We remain unpersuaded as to both of these contentions. Assuming, as we may, the storage of the impounded automobile in a properly protected area, the satchel in the locked trunk was as safeguarded in the hands of the police as it was in the hands of the owner. And the police officer, we think, is less likely to be falsely accused of theft or loss of contents of the satchel if his hands never touch the contents. Moreover, the probability of civil liability on the part of a police officer, for loss or theft of property during impoundment of an automobile, is unsupported by experience; the State is unable to cite any example of such liability, here or elsewhere. In the final analysis, the police officer will be protected henceforth by the law of this case holding that he has no duty under the law to open closed baggage in order to secure its contents. See Gallik v. Superior Court, 5 Cal.3rd 855, 97 Cal.Rptr. 693, 489 P.2d 573 (1971).

We remain of the opinion that loss to the owner or false claim against the police, by reason of disability of the police to search the contents of the closed satchel in

the locked automobile trunk, is too conjectural to fulfill the Fourth Amendment requirement of reasonableness of a search without a warrant.

■ The State raises for the first time the specter that a closed satchel in an impounded automobile may contain explosives or other dangerous substance; that, therefore, a search thereof would be reasonable as part of every inventory. This is also too conjectural, in our opinion, to fulfill the Fourth Amendment requirement of reasonableness of a search without a warrant. The State is unable to offer any example of such circumstance, here or elsewhere. The same argument was presented in Boulet v. State, 17 Ariz.App. 64, 495 P. 2d 504, 509 (1972), where the Court of Appeals of Arizona called it "flimsy" and held that "such a risk is so remote that it would be unwarranted to infringe upon Fourth Amendment rights to cover such a circumstance."

This does not mean, of course, that a satchel which by sound or sight appears to contain a dangerous substance may not be opened; nor does it mean that an abandoned automobile containing a suspicious-looking closed container may not be the subject of a quick search warrant. Throughout this problem, it is to be recalled that we deal here with the permissible extent of police search action without a warrant.

The State also reargued the law regarding the plain view doctrine in relationship to the automobile inventory rule:

The State argues that United States v. Mitchell, 9 Cir., 458 F.2d 960 (1972) supports its contention that the opening of the satchel was reasonable under the Fourth Amendment, rather than the contrary as we have indicated. The Mitchell case involved a partially opened jewelry sample case in plain view on the front floor of the impounded automobile, with several valuable watches, in plastic cases and with price tags attached, on the front seat and on the floor around the sample case. In securing the contents, the police officer "straightened up the sample case and put the watches in it." So doing, the officer saw the contraband weapon in the sample case. The conclusion in Mitchell that the gun was admissible in evidence manifestly does not conflict with our holding here. This is confirmed by the dissent in Mitchell, 458 F.2d at 964.

The State places special reliance upon the following cases as being contrary to the conclusion we reach here:

State v. Montague, 73 Wash.2d 381, 438 P.2d 571 (1968) in which the officer "examined a brown paper bag" on the floor of the impounded car and "found marijuana therein". There is no indication in the opinion that the paper bag was closed or that its contents were not in plain view.

People v. Sullivan, 29 N.Y.2d 69, 323 N. Y.S.2d 945, 272 N.E.2d 464 (1971), wherein a brief case found in the impounded car (not in the trunk) was opened by the police in the course of the inventory and a gun was found therein. We cannot agree with the isolated view of the majority in Sullivan that an automobile inventory is not a "search"; we agree, rather, with the dissent written by Chief Judge Fuld which seems in accord with our rationale and conclusion here.

United States v. Fuller, D.D.C., 277 F. Supp. 97 (1967), in which the police officer saw an "eyeglass case partially protruding from beneath the front seat" of the impounded car, and "discovered within it" a drug. There is no indication in the opinion that the eyeglass case was closed or that its contents were not in plain view.

State v. Keller, Or., 497 P.2d 868 (1972), in which the police found bullets in an occupant's pocket and saw a gun in open view on the floor of the automobile where he had been sitting; they also saw on the floor of the car an "open cosmetics case in which numerous syringes and similar paraphernalia were visible." On the floor of the back seat was a fishing tackle box, tied closed by wire. The police untied the box

and found the narcotics which were admitted in evidence. The facts of that case are obviously not comparable; but insofar as that case may be inconsistent with the view we here adopt, we find its rationale unpersuasive.

More in point and more persuasive than the foregoing, in our opinion, are the authorities in accord with the view we adopt upon the plain view doctrine in its application to the automobile inventory rule:

In Mozzetti v. Superior Court, 4 Cal.3rd 699, 94 Cal.Rptr. 412, 484 P.2d 84 (1971), the police officer saw a "small suitcase on the back seat" of the automobile being impounded and inventoried. "Finding the suitcase unlocked he opened it, apparently to determine if it contained any articles of value." Inside he found marijuana which was seized. After a thorough consideration of the comparatively new constitutional and policy problems involved in automobile inventory searches, the Supreme Court of California held the evidence unconstitutionally seized and inadmissible, stating: (94 Cal.Rptr. at 417 and 420, 484 P.2d at 89 and 92).

"We have no doubt that the police, in the course of such valid protective measures, may take note of any personal property in plain sight within the automobile being taken into custody. Any objects clearly visible without probing—including the suitcase in this instance—may be listed in an inventory or other police report. * * * What concerns us here is the reasonableness of the search *into* the closed suitcase.

\* \* \* \* \* \*

"[T]he inventory, by its nature, involves a random search of the articles left in an automobile taken into police custody; the police are looking for nothing in particular and everything in general. But this fact does not justify the search and establish its constitutionality. To the contrary, a random police search is the precise invasion of privacy which the Fourth Amendment was intended to prohibit. * * *."

And Boulet v. State, 17 Ariz.App. 64, 495 P.2d 504 (1972) involved the opening of a closed "shaving satchel", which was in plain view of the police officer during a motor vehicle inventory search, and the finding therein of drug paraphernalia. The Court of Appeals of Arizona held the evidence wrongfully seized and inadmissible.

In the persuasive dissent in People v. Sullivan, 29 N.Y.2d 69, 323 N.Y.S.2d 945, 954, 272 N.E.2d 464, 470 (1971), Chief Judge Fuld made this statement in connection with the opening of a brief case found in the impounded automobile being inventoried.

"[T]he precautions taken [placing the locked auto in a guarded storage area], without more, not only safeguarded the auto but protected the police and the city against false claims of loss of, or damage to, its contents. What the People overlook in pressing their position is the automobile owner's countervailing interest in preserving the privacy of his personal effects and preventing anyone, including the police, from searching briefcases, or other closed containers and areas in his auto, when it is removed to a garage or other police facility. * * *."

\* \* \*

The State takes exception to our gratuitous suggestion that an "effective sealing device or chain-lock device" placed on closed baggage by the police might assist the protection of its contents and the protection of the police. To avoid unintended implications and obligations, this suggestion will be stricken from the opinion.

\* \* \*

Upon careful reexamination of the problem and the law, we adhere to the conclusion that the search without a warrant of the contents of the closed satchel, under the circumstances of this case, was an unreasonable search violative of Fourth Amendment rights.